JRS/ALK:AMR
F. #2023R00487

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                            Docket No. 23-CR-328 (KAM)

TONY CLANTON and
LAWRENCE DOTSON,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CLANTON'S
MOTION TO SUPPRESS AND MOTIONS IN LIMINE

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Andrew M. Roddin
Assistant U.S. Attorney
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I. RELEVANT BACKGROUND ..................................................................................... 1

    A. Clanton's Motion to Suppress........................................................................... 1

    B. Clanton's Motions In Limine............................................................................ 6

II. CLANTON'S MOTION TO SUPPRESS SHOULD BE DENIED WITHOUT A HEARING........................................................................................................ 7

    A. Applicable Law................................................................................................ 7

    B. Discussion........................................................................................................ 9

III. CLANTON'S MOTIONS TO PRECLUDE EVIDENCE SHOULD BE DENIED .............. 11

    A. The Government Should Be Permitted to Cross-Examine Clanton on Certain Prior Felony Convictions ..................................................................... 12

    B. License Plate Reader Records Should Be Admitted as Records of a Regularly Conducted Activity Without Expert Testimony................................................................... 13

    C. The Government Should Be Permitted to Refer to the Victims as "Victims".................. 14

    D. Evidence of the January 20, 2023 and June 24, 2023 Home Invasions Is Admissible..... 15

    E. The Challenged Expert Testimony Should Be Admitted ................................. 16

IV. CONCLUSION............................................................................................................ 17

PRELIMINARY STATEMENT

Defendant Tony Clanton moves for suppression of evidence and for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), alleging that certain search warrant affidavits "misrepresented or omitted critical facts." See ECF No. 52 ("Mot. to Suppress"). The defendant also moves in limine to preclude cross-examination about his criminal history, and to preclude certain evidence at trial, including any reference to him as a "convicted felon." See ECF No. 53 ("Mot. In Limine"). For the reasons set forth below, the Court should deny Clanton's motion to suppress without a hearing and, with the exception of the motion to preclude reference to him as a "convicted felon," should deny his motions in limine.

I. RELEVANT BACKGROUND

A. Clanton's Motion to Suppress

Clanton moves to suppress evidence obtained pursuant to search warrants, including cell site location information, by challenging three search warrants based on one statement contained in each of those warrants. Specifically, Clanton challenges the affiant's identification of Clanton in a video from a Harbor Freight Tools store on June 27, 2023 by arguing that, because the affiant later incorrectly identified someone else as Clanton in a video of the June 3, 2023 robbery of Annadale Smoke Shop, the affiant misrepresented her ability to identify Clanton in the Harbor Freight Tools video. Below is an overview of the totality of the information contained in the three search warrant affidavits.

1. The July 12, 2023 Cell Site Warrant

On July 12, 2023, the government applied for a warrant to obtain cell phone location information for the phone numbers referred to in the government's motions in limine as

the "Clanton 2967 Number," the "Clanton 8087 Number," and the "Dotson 1264 Number."[1]  See ECF No. 55 at 2 (Gov't Mots.); ECF No. 56-1 ("July 12, 2023 Cell Site Warrant").  In support of that warrant, the affiant (a law enforcement agent) described a variety of evidence tying the defendants to armed robberies committed on January 20, 2023; June 3, 2023; June 24, 2023; June 27, 2023; and July 12, 2023.  Among other information, the July 12, 2023 Cell Site Warrant contained the following:

- A U-Haul van used in the January 20, 2023 home invasion was rented using information associated with Clanton, including the physical address at which a company owned by Clanton is located and an email address that included Clanton's last name and middle initial.  See ECF No. 56-1 ¶ 13.

- The modus operandi of the January 20, 2023 home invasion—"impersonating someone the victims might believe had lawful access to their home"—was "similar to a modus operandi Clanton ha[d] used in other robberies."  Id.

- Cars that appeared to be the cars referred to in the government's motions in limine as the Clanton BMW and the Dotson Mercedes, ECF No. 55 at 2, 7, were shown on video driving near Annadale Smoke Shop shortly after the shop was robbed on June 3, 2023.[2]  ECF No. 56-1 ¶¶ 20-21.  They were accompanied by a black Infiniti registered to James Clanton (the "Black Infiniti"), which was significant not only because it was registered to someone

---

[1]  In the July 12, 2023 Cell Site Warrant, the Dotson 1264 Number was referred to as "SUBJECT PHONE 1," the Clanton 2967 Number as "SUBJECT PHONE 2," and the Clanton 8087 Number as "SUBJECT PHONE 3."  ECF No. 56-1 ¶ 1.

[2]  In the July 12, 2023 Cell Site Warrant, the Clanton BMW was referred to as the "Gray BMW" and the Dotson Mercedes as the "White Mercedes."  ECF No. 56-1 ¶¶ 8.a.-8.c.

with the last name Clanton, but also because it was present around the time and location of the June 27, 2023 attempted robbery as well as the June 3, 2023 robbery. Id. ¶¶ 21, 24.

- Video footage showed a car that appeared to be the Clanton BMW driving on Gunton Place shortly before the June 24, 2023 attempted home invasion on that block and showed the gunman getting into the Clanton BMW after the attempted home invasion. Id. ¶¶ 23.b., 23.e.

- Video footage from a Harbor Freight Tools store on Staten Island showed the Clanton BMW parking there on the morning of June 27, 2023, the day of the Edison, New Jersey attempted robbery. Id. ¶ 25. Video footage and records from the store showed that Clanton bought a 10-pack of zip ties. Id. Specifically, in the statement Clanton now challenges, the affiant explained that "Video footage from a Harbor Freight Tools store located at 2295 Forest Avenue, Staten Island, New York, shows that on or about the morning of June 27, 2023, the Gray BMW parked in the store's parking lot and TONY CLANTON, a tall Black male with a medium build wearing a dark-colored suit, a white shirt, and black shoes, got out of its driver's door and walked into the store." Id.

- Video footage, license plate readers, and a neighbor's report showed that the Clanton BMW, the Dotson Mercedes, and the Black Infiniti were driving together on June 27, 2023 in the vicinity of the Edison, New Jersey attempted robbery and the victim's jewelry store. Id. ¶¶ 24.b.-24.d., 24.f.

3

- The <u>modus</u> <u>operandi</u> of the June 27, 2023 attempted robbery—impersonating federal law enforcement agents—was similar to that of a 2007 home invasion in which Clanton impersonated a federal agent. Id. ¶ 10.b.

The July 12, 2023 Cell Site Warrant described the gunmen who robbed Annadale Smoke Shop on June 3, 2023 as "[t]he gunman who approached [the victim] first outside the store" and "[t]he gunman who approached [the victim] second." Id. ¶ 18.a.

Pursuant to the July 12, 2023 Cell Site Warrant—not, as Clanton claims, pursuant to searches of the defendants' homes and cars, see ECF No. 52 at 14—the government obtained cell site location information for the Clanton 2967 Number, the Clanton 8087 Number, and the Dotson 1264 Number.

### 2. The Premises and Devices Warrants

A July 24, 2023 affidavit in support of a warrant to search the defendants' residences, cars, and cell phones, ECF No. 56-3 (the "July 24, 2023 Residences and Cars Warrant"), contained the above information and added cell phone location information obtained pursuant to the historical cell site warrant. Specifically, the July 24, 2023 Residences and Cars Warrant explained that the defendants' cell phones had been located in the vicinities of each of the crimes described in the July 12, 2023 warrant affidavit. See ECF No. 56-3 ¶¶ 18, 28, 31, 34.

The July 24, 2023 Residences and Cars Warrant also described the July 12, 2023 robbery, explaining that a car consistent with the Clanton Mercedes was shown on video following the victim's car toward the victim's home, picking up the gunman after the robbery, and driving "approximately 1.5 blocks from the location of the robbery . . . approximately one to two minutes before the robbery." Id. ¶¶ 37.a.-37.d. It also explained that the Clanton 8087 Number was also in the vicinity of that robbery. Id. ¶ 38. This affidavit again described the

gunmen who robbed Annadale Smoke Shop on June 3, 2023 as "[t]he gunman who approached [the victim] first outside the store" and "[t]he gunman who approached [the victim] second." Id. ¶ 24.a.

The July 24, 2023 Residences and Cars Warrant contained the same identification of Clanton as the person who purchased zip ties that had been set forth in the July 12, 2023 Cell Site Warrant. ECF No. 56-3 ¶ 35.

### 3. The Cell Site Simulator and Cell Phones Warrants

Simultaneously with the submission of the July 24, 2023 Residences and Cars Warrant, the government applied for a warrant to use a cell site simulator device and to search the defendants' persons and any cell phones found on their persons, ECF 56-2 (the "July 24, 2023 Simulator and Phones Warrant"), as well as a complaint and arrest warrant for one count of Hobbs Act robbery. The July 24, 2023 Simulator and Phones Warrant incorporated by reference the July 12, 2023 warrant, the July 24, 2023 Residences and Cars Warrant, and the July 24, 2023 complaint, ECF No. 56-2 ¶ 2, and stated that as set forth in those applications, "the evidence indicates that CLANTON and DOTSON have participated in five completed or attempted robberies between January 20, 2023 and July 12, 2023" and that the Clanton 8087 Number and the Dotson 1264 Number had been used in those crimes. ECF No. 56-2 ¶ 9.

As noted above, out of all of the above-described statements contained in the warrant affidavits, Clanton challenges only the identification of Clanton in the June 27, 2023 Harbor Freight Tools video. Notably, Clanton's motion does not claim that this statement was inaccurate or deny that he is the person shown in the Harbor Freight Tools video. Rather, the motion claims that the affiant misrepresented that she was able to identify Clanton in the Harbor

5

Freight Tools video because she misidentified him in the June 3, 2023 Annadale Smoke Shop video. ECF No. 52 at 19.

  B.  Clanton's Motions In Limine

  Simultaneously with his motion to suppress, Clanton moved to preclude cross-examination about his criminal history, ECF No. 53 at 1-4, to prohibit reference to him as a "convicted felon," id. at 4, to preclude the introduction of license plate reader records, id. at 5-6, to preclude references to "victims," id. at 6, to preclude uncharged bad acts and records from Clanton's prior incarceration, id., at 6-7, and to preclude certain expert testimony, id. at 7.

  As to Clanton's criminal history, the government has moved to cross-examine Clanton about his 2008 convictions for criminal possession of a controlled substance and criminal possession of a weapon and his 2009 conviction for assault. The government has also moved to introduce evidence of the January 20, 2023 home invasion and the June 24, 2023 attempted home invasion both as direct evidence of the charged crimes and as evidence of uncharged bad acts pursuant to Rule 404(b).

  With respect to license plate evidence, the government intends to introduce at trial license plate reader records showing the locations of the defendants' cars and the Black Infiniti at certain relevant times, including, but not limited to, around the times of the robberies and the June 27, 2023 purchase of zip ties at Harbor Freight Tools.

  Finally, as to expert testimony, in addition to its previously-noticed intention to call a ballistics examiner to testify about the operability of recovered firearms, the government intends to call a special agent of the Federal Bureau of Investigation ("FBI") as an expert witness to provide an opinion about the approximate locations of the cell phones that used the Clanton 2967 Number, the Clanton 8087 Number, and the Dotson 1264 Number, including, but not limited to, on January 20, 2023; June 3, 2023; June 24, 2023; June 27, 2023; and July 12, 2023.

6

## II. CLANTON'S MOTION TO SUPPRESS SHOULD BE DENIED WITHOUT A HEARING

Clanton argues that suppression of all evidence obtained pursuant to the three search warrants described above is warranted because the affiant misrepresented her ability to identify Clanton. The motion to suppress is meritless. As a threshold matter, Clanton has not alleged—let alone demonstrated—that the challenged statement is false, and the Court should deny his motion on that basis alone. Even assuming Clanton could meet that threshold requirement (he cannot), his motion falls far short of making the required showing that the search warrants contained intentional or reckless false statements that were material to the determination of probable cause.

### A. Applicable Law

"Ordinarily, a search or seizure pursuant to a warrant is presumed valid." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003). Where, however, a defendant alleges that an affidavit in support of a search warrant contains deliberately misleading or recklessly false information, a district court should determine whether circumstances warrant a hearing to test the accuracy of those claims in accordance with Franks v. Delaware, 438 U.S. 154 (1978).

To justify a hearing, "a defendant must make a 'substantial preliminary showing' that (1) the warrant application contains a false statement, (2) the false statement was included intentionally or recklessly, and (3) the false statement was necessary to the finding of probable cause." United States v. McKenzie, 13 F.4th 223, 236 (2d Cir. 2021) (citing Franks, 438 U.S. 154); United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted). As the Supreme Court has explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations

> must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks, 438 U.S. at 171.

"The Franks standard is a high one," Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991), and a defendant seeking to make the required showing of an intentional or reckless misstatement or omission must show more than inadvertent error. "[E]very statement in a warrant affidavit does not have to be true." United States v. Trzaska, 111 F.3d 1019, 1027 (2d Cir. 1997). Rather, the relevant inquiry is whether a material false statement or omission was made intentionally or recklessly.

To determine whether the information claimed to be false was material to the probable cause determination, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." Trzaska, 111 F.3d at 1027-28. If the affidavit supports a finding of probable cause even without the challenged information, "the inaccuracies were not material to the probable cause determination and suppression is inappropriate." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000). "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" Id. at 718 (quoting United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985)). In making this assessment, the Court should view the challenged statement "in the context of the application as a whole." United States v. Discala, No. 22-675, 2023 WL 4118637, at *3 (2d Cir. June 22, 2023).

8

B.  Discussion

As an initial matter, the challenged statement—that Clanton was the person shown in the June 27, 2023 Harbor Freight Tools video—was not false, much less intentionally or recklessly false. The government maintains that that video shows Clanton, and his own motion does not state otherwise.

In any event, Clanton's argument that the affiant's identification of Clanton contains an implied assertion that she was able to identify Clanton was "deliberately false" or "recklessly false," Clanton Supp. Mot. at 19, is unsupported by "affidavits or sworn or otherwise reliable statements of witnesses," Franks, 438 U.S. at 171. To the contrary, it is belied by the evidence cited in the search warrant affidavits themselves. The wealth of information known to the affiant that corroborated her identification of Clanton in the Harbor Freight Tools video demonstrates that the statement was made in good faith. The affiant knew that the Clanton 8087 Number and the Clanton BMW were in the vicinity of the Edison, New Jersey attempted robbery later the same day (to say nothing of the presence of that phone and that car near the other crimes), and that the person identified as Clanton was shown getting out of the driver's seat of the Clanton BMW in the Harbor Freight Tools parking lot. ECF No. 56-1 ¶ 25; ECF No. 56-3 ¶ 35. The affiant was also aware that the items he purchased, zip ties, were "the same type of items that the gunmen in the Annadale Smoke Shop robbery used to restrain [the victim] approximately three weeks earlier." ECF No. 56-1 ¶ 25; ECF No. 56-3 ¶ 35. All of this context shows the identification to be the product of a thorough investigation in which the evidence pointed toward Clanton, not the result of any intentional or reckless misstatement about the Harbor Freight Tools video.

The affiant's actions after realizing that the complaint contained an inaccuracy further demonstrate that her statements in the warrant affidavits were anything but reckless. As

9

described in the government's motion in limine, ECF No. 55 at 8-9, after seeing Clanton in person and upon further review of the evidence, the affiant informed the assigned prosecutor that the person identified in the complaint as Clanton in the June 3, 2023 Annadale Smoke Shop video may possibly be another person. The government then moved to dismiss the complaint and both defendants were released. The fact that the affiant did the right thing by moving swiftly to correct this possible misstatement, knowing the consequences it could have for the case, is evidence that, far from acting recklessly, she acted carefully in order to respect Clanton's rights and ensure a fair process. When that quick correction is taken into account, it defies logic to suggest, as Clanton does, that the affiant's statements were "deliberately false." ECF No. 52 at 19.

    The defendant has also failed to show that the identification of Clanton was material to the probable cause determination, which is an independent basis to deny his motion. For this analysis, the Court must "disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." Trzaska, 111 F.3d at 1027-28. Even if the identification of Clanton in the June 27, 2023 Harbor Freight Tools video were inaccurate—and the government maintains that it was accurate—there was ample evidence to support a finding of probable cause without that identification. If the identification of Clanton as the person purchasing the zip ties were removed, the information left would be that the Clanton BMW had parked at Harbor Freight Tools and that a person had gotten out of its driver's seat, purchased zip ties inside, and gotten back into the Clanton BMW, which was later shown to have been in the vicinity of the June 27, 2023 attempted robbery along with the Dotson Mercedes, the Black Infiniti, and (as set forth in the July 24, 2023 Residences and Cars Warrant) the Clanton 8087 Number. ECF No. 56-1 ¶¶ 24-25; ECF No. 56-3 ¶ 33-35. That

10

information, even without the identification of Clanton as the purchaser of the zip ties, would have been more than sufficient for a finding of probable cause.

Indeed, a surplus of video footage, records, and witness statements combined to support that finding. As described above, each search warrant application explained that cars associated with Clanton and Dotson, and the Black Infiniti, were shown on video or license plate readers around the times and locations of various robberies and attempted robberies. The July 24, 2023 affidavits also included cell phone location information that had been obtained pursuant to the July 12, 2023 warrant, which indicated that Clanton's cell phone and Dotson's cellphone were in the vicinities of the crimes. The affidavits included a description of a similar modus operandi used in three different crimes in which Clanton was implicated—the 2007 home invasion for which he was previously convicted, the January 20, 2023 home invasion, and the June 27, 2023 attempted robbery—that involved "impersonating someone the victims might believe had lawful access to their home," whether a law enforcement agent or a painter. ECF No. 56-1 ¶ 13; ECF No. 56-3 ¶ 19. In short, the affidavits provided overwhelming evidence that Clanton's residence, cars, and cell phone would contain evidence of the offenses being investigated even without the sole statement he now challenges. See Discala, 2023 WL 4118637, at *3 (defendant failed to make materiality showing where wiretap affidavit "drew on a wide variety of uncontested sources" that "provided ample support for the conclusion that a crime was underway").

III.    CLANTON'S MOTIONS TO PRECLUDE EVIDENCE SHOULD BE DENIED

Clanton moves to preclude cross-examination about his criminal history, ECF No. 53 at 1-4, to prohibit reference to him as a "convicted felon," id. at 4, to preclude the introduction of license plate reader records, id. at 5-6, to preclude references to "victims," id. at 6, to preclude

11

uncharged bad acts and records from Clanton's prior incarceration, id., at 6-7, and to preclude certain expert testimony, id. at 7.

.As an initial matter, the government does not intend to refer to Clanton as a "convicted felon," and the Court should therefore deny Clanton's motion to preclude such reference as moot. Clanton's other motions should be denied as meritless.

    A.    <u>The Government Should Be Permitted to Cross-Examine Clanton on Certain Prior Felony Convictions</u>

As set forth in the government's motions <u>in limine</u>, ECF No. 55 at 27-30, Clanton's felony convictions from 2008 (criminal possession of a controlled substance and criminal possession of a weapon) and 2009 (assault) are relevant to his credibility and should be the subject of cross-examination. Clanton's motion argues that his convictions for criminal possession of a controlled substance and criminal possession of a weapon have "little bearing" on his truthfulness. ECF No. 53 at 2. While courts have held that such crimes do not bear on credibility when they do "not apparently involve falsity," <u>United States v. Steele</u>, 216 F. Supp. 3d 317, 327 (S.D.N.Y. Oct. 20, 2016), the fact is that Clanton's 2008 conviction did involve falsity: he used the trappings of a federal law enforcement agent to make the victim believe that Clanton had a genuine search warrant and legal authority to enter the victim's residence. <u>See</u> ECF No. 55 at 10. Those actions, which involved the use of deceit for personal gain, are unquestionably relevant to Clanton's credibility as a witness. With regard to the assault conviction, the fact that that crime may not fall within the meaning of Rule 609(a)(2), <u>see</u> <u>United States v. Estrada</u>, 430 F.3d 606, 614 (2d Cir. 2005), does not exclude it from the possibility of admission under Rule 609(a)(1)(B), and as the government argued in its motion <u>in limine</u>, the fact that Clanton committed the crime while in the strict environment of a jail, as opposed to doing so while at liberty, increases its relevance to his credibility. <u>See</u> ECF No. 55 at 29-30.

Clanton's argument that these convictions "far exceed the 10-year limit" referred to in Rule 609(b) ignores the fact that, when accounting for time he spent incarcerated, those convictions fall well within ten years. Pursuant to Rule 609(b), the relevant date on which the ten-year clock begins is the date of Clanton's "release from confinement": July 13, 2016, approximately seven and a half years before trial is scheduled to begin. See United States v. Brown, 606 F. Supp. 2d 306, 315 (E.D.N.Y. 2009) (date of conviction from eight and a half years before trial was not an admissibility concern and could be considered by jury in determining whether the conviction impeached defendant's credibility).

Clanton argues that his prior convictions for Hobbs Act robbery and use of a firearm in a crime of violence are too similar to the current charges for cross-examination to be permitted. ECF No. 53 at 3. The government does not seek to cross-examine Clanton about these convictions.

B. License Plate Reader Records Should Be Admitted as Records of a Regularly Conducted Activity Without Expert Testimony

The government intends to introduce license plate reader records through police officers showing that the defendants' cars and the Black Infiniti were present at certain times and locations relevant to the charged crimes, including, but not limited to, the locations of some of the robberies. Clanton moves to preclude this evidence, arguing that Rule 16(a)(1)(G) requires that an expert witness explain the results. The defendant does not cite, and the government is not aware of, any case in which a court in the Second Circuit has held that expert testimony is necessary for the introduction of license plate reader records. The sole case the defendant does cite related to these records, Green v. City and County of San Francisco, 751 F.3d 1039 (9th Cir. 2014), was a civil case that dealt with the lawfulness of police conduct during a stop and did not address the evidentiary question of whether the records had to be admitted subject to Rule 702.

13

Nor is there any indication that, as Clanton's motion suggests, the license plate reader system is "based on scientific, technical, or other specialized knowledge." ECF No. 53 at 5. Rather, the government expects a police officer to testify that the images and readings are automatically created and maintained in a database as part of the ordinary course of business. See Fed. R. Evid. 803(6). This witness is also anticipated to testify that he himself reviewed each of the photographs to be admitted and verified that the license plate shown in the photograph was accurately recorded in the system. Such evidence is commonly admitted in this District without expert testimony. See United States v. Yu et al., 22-CR-208 (CBA), Oct. 4, 2023 Trial Tr. at 2137-51; United States v. Morrison et al., 20-CR-216 (AMD), ECF No. 194 (Oct. 19, 2022 Trial Tr. at 589-90); United States v. Zottola et al., 18-CR-609 (HG), Sep. 9, 2022 Trial Tr. at 2120-44; United States v. Elias et al., 18-CR-33 (NGG), ECF No. 653 (Mar. 18, 2022 Trial Tr.) at 414-19; ECF No. 638 (Mar. 22, 2022 Trial Tr.) at 689-92. Absent any authority requiring this evidence to be introduced through the testimony of an expert witness, the Court should decline to impose such a requirement.

### C. The Government Should Be Permitted to Refer to the Victims as "Victims"

Clanton's motion to prohibit the government from referring to the robbery victims as "victims" in front of the jury should be denied. Judges in this District have held that the term "victim" is not unduly prejudicial and have permitted the government to refer to victims as such. United States v. James, 607 F. Supp. 3d 246, 267 (E.D.N.Y. 2022); United States v. Gasperini, No. 16-CR-441 (NGG), 2017 WL 3140366, at *7 (E.D.N.Y. July 21, 2017). Because the government "is within its rights to take and advocate for a different view of the evidence" than that which the defense advocates, Gasperini, 2017 WL 3140366, at *7, the Court should permit this terminology and instruct the jury that "arguments by counsel do not constitute evidence," and, if necessary, that the fact that an attorney for the government refers to someone as a victim

does not constitute evidence that that person is a victim or that a defendant committed a crime. James, 607 F. Supp. 3d at 247.

      D.      Evidence of the January 20, 2023 and June 24, 2023 Home Invasions Is Admissible

Clanton moves to preclude evidence of the January 20, 2023 home invasion and the June 24, 2023 attempted home invasion (collectively, the "Home Invasions"). As set forth in the government's motion in limine, ECF No. 55 at 11-21, evidence of the Home Invasions is highly probative, relevant evidence in at least two ways. First, it serves as direct evidence of the charged conspiracy and of the defendants' use in the charged robberies of the Clanton 2967 Number, the Clanton 8087 Number, the Dotson 1264 Number, the Clanton BMW, and the Dotson Mercedes. Id. at 11-17. Second, it is admissible pursuant to Rule 404(b) to demonstrate the existence and evolution of a relationship of trust among the co-conspirators and their knowledge that a firearm was likely to be used in their crimes. Id. at 17-21.

Evidence of the Home Invasions would not be substantially more prejudicial than probative, given that they provide powerful proof that the defendants used the cell phones and cars described above and their similar severity relative to the charged robberies. See United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (evidence of uncharged crimes is admissible where they do not "involve conduct any more sensational or disturbing" than the charged crimes) (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Contrary to Clanton's suggestion, the jury is not likely to become confused or the trial unmanageably complex as a result of the admission of these two relatively discrete crimes, and any risk of confusion will be ameliorated by giving a clear instruction as to the permissible purposes of this evidence.

Clanton also moves to preclude admission of the records of his incarceration. The government does not intend to admit these records during its case in chief, but may seek to question Clanton using them if he testifies, subject to the Court's decision on the government's motion to question Clanton about his criminal history, and may seek to introduce them in its rebuttal case depending on the content of any potential defense case.

E.     The Challenged Expert Testimony Should Be Admitted

As explained above, the government intends to call an FBI special agent trained in analysis of cell site location information to provide expert testimony about the approximate locations of the cell phones associated with the Clanton 2967 Number, the Clanton 8087 Number, and the Dotson 1264 Number. On October 26, 2023, the government provided each defendant with raw cell site location records and maps showing the approximate locations of these cell phones during the periods for which location information was obtained, and on December 8, 2023, the government provided each defendant with draft slides created from the cell site location information disclosed on October 26, 2023. The witness is expected to testify that the cell phones were at those approximate locations at the times indicated for each communication. Disclosure of this evidence is sufficient to provide notice of the government's intent to call an expert witness to testify about this subject. See United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2523193, at *17 (E.D.N.Y. Mar. 15, 2023); United States v. Jean, No. 19-CR-123 (JS), 2020 WL 70921, at *6 (E.D.N.Y. Jan. 7, 2020), aff'd, No. 20-3659, 2022 WL 1100433 (2d Cir. Apr. 13, 2022) ("Despite Defendant's current arguments, it is readily apparent to the Court that Defendant was well aware of what both [the cell site expert's] testimony and any accompanying records or slides would show: that his phone's location corresponded with the . . . robbery and timeline.") The government will promptly provide this witness's qualifications, a list of publications, and a list of cases in which the witness has

16

testified pursuant to Rule 16(a)(1)(G), as well as a signed statement endorsing the maps and slides produced to the defendants as "a complete statement of all opinions that the government will elicit from the witness" and the "bases and reasons for them." Fed R. Crim. P. 16(a)(1)(G)(iii), (iv).

IV.     CONCLUSION

For the reasons set forth above, the government respectfully submits that Clanton's motion to suppress should be denied without a hearing and that Clanton's motions to preclude certain evidence should be denied, other than as consented to herein.

Dated:    Brooklyn, New York
          December 8, 2023

                                    Respectfully submitted,

                                    BREON PEACE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

                            By:     /s/ Andrew M. Roddin
                                    Andrew M. Roddin
                                    Assistant United States Attorney
                                    (718) 254-6455

17